Judgment rendered July 15, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,933-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JUDY NEGRETE                                        Plaintiff

versus

PARISH OF CADDO                                     Defendant

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-W
Parish of Caddo, Louisiana
Trial Court No. 21-06209

Christopher T. Lee
Workers' Compensation Judge (*Ad Hoc*)

* * * * *

| | |
|---|---|
| LIZ MURRILL<br>Attorney General | Counsel for Defendant-<br>Appellant, State of<br>Louisiana |
| KIRK L. LANDRY<br>E. DAVID GILMER<br>Assistant Attorneys General | |
| JACK BAILEY LAW CORPORATION<br>By: Jack M. Bailey, Jr.<br>　　Mary L. Salley Bylsma | Counsel for Plaintiff-<br>Appellee, Judy Negrete |
| THOMAS, SOILEAU, JACKSON<br>& COLE, LLP<br>By: Erica M. Ducoing | Counsel for Defendants-<br>Appellees, Parish of<br>Caddo and Corvel<br>Corporation |

* * * * *

Before THOMPSON, MARCOTTE, and ELLENDER, JJ

**ELLENDER, J.**

The State of Louisiana appeals a judgment of the Office of Workers' Compensation finding the State was the borrowing employer of the claimant, Judy Negrete, who was a temporary employee of the Caddo Parish Registrar of Voters, and ordering the State to pay one-half of her compensation benefits for an accident sustained while processing absentee ballots for a state election. For the reasons expressed, we reverse and render.

## FACTS AND PROCEDURAL HISTORY

Ms. Negrete was hired as a temporary employee of the Registrar of Voters in July 2019. Making an hourly wage of $11.50, she worked as needed around election times. On March 11, 2021, she was in a storage room filing absentee ballots from a statewide election (Board of Secondary and Elementary Education) in large plastic bins. After moving a bin on a metal shelf, she crouched to sit down, but her office chair had rolled away. Instead of settling on the chair, she fell to the floor and struck the back of her head against another metal shelving unit. (The accident was captured on video, which was admitted at trial.) She injured her back and neck.

Ms. Negrete filed this disputed claim for compensation against the Parish of Caddo ("the Parish") in November 2021. She alleged no wage benefits had been paid (she claimed a comp rate of $302.66), but her principal claim was for approval of treatment by a neurosurgeon. The Parish responded it was "unknown" whether she was employed by the Parish at the time of her injury, but the specialist authorization was quickly approved.

By an amended claim, in December 2021, Ms. Negrete clarified her employer was the Registrar of Voters but requested service on the State of

Louisiana ("the State"), on grounds the Parish had alleged the State was the "actual employer." The Parish followed with a cross-claim against the State. This pleading denied Ms. Negrete was employed by the Parish, but if she was, the Parish was entitled to full indemnification or contribution from the State, under La. R.S. 23:1061 (B) or 23:1031 (C). The State denied all allegations in the cross-claim.

In March 2022, Ms. Negrete and the Parish executed a consent agreement. This conceded that she was the Parish's employee at the time of her accident, and the Parish agreed to pay her comp rate of $196.47 a week, accrued weekly benefits of $4,322.34, and any future medical benefits. However, the agreement expressly reserved the Parish's right to seek contribution from the State, "whom Defendant asserts is also an employer of Claimant[,]" as the State was a "joint employer and/or statutory employer and/or borrowing employer[.]"

A large amount of motion practice ensued, which crystallized the issues on appeal. The State asserted, by exception of no cause of action, that it owes comp benefits to "employees of the state, but not those of political subdivisions," under La. R.S. 23:1034 (D); the Registrar of Voters, it argued, is not a State agency but, rather, a Parish agency. The Parish countered Ms. Negrete was an employee of *both*, as she was under the exclusive control of State employees and the State provided a portion of her wages. The Workers' Compensation Judge ("WCJ") denied this exception.

The State then moved for summary judgment asserting the consent agreement was a judicial confession by the Parish that it was Ms. Negrete's employer. It also reasserted the exclusion of benefits for Parish employees, R.S. 23:1034 (D), and denied the existence of statutory employment, under

2

R.S. 23:1061. The Parish responded that, by the prevailing law governing the employer-employee relationship, especially "power of control," Ms. Negrete was a State employee. *Chailland Bus. Consultants v. Duplantis*, 03-2508 (La. App. 1 Cir. 10/29/04), 897 So. 2d 117, *writ denied*, 04-2922 (La. 2/4/05), 893 So. 2d 878. Finding a genuine issue of material fact, the WCJ denied the State's MSJ.

Finally, the Parish filed its own MSJ asserting Ms. Negrete was a "borrowed employee" of the State, as she was performing "work for the State, using State-provided tools, at the direction of State employees." In addition to deposition testimony, the Parish offered an Attorney General Opinion which concluded that, for purposes of "accrued, sick and compensatory leave," the "registrar of voters and his employees are properly classified as state and not parish officials or employees." Op. Att. Gen., No. 85-355 (5/23/85). The WCJ found certain facts were still in dispute and denied the Parish's MSJ.

## TRIAL AND EVIDENCE

The matter came to trial in April 2024. The Parish called three witnesses. The first, Ms. Negrete, reiterated she was a "permanent temporary seasonal worker" employed by the Parish. She had been hired by Linda Feazell, the chief deputy registrar and second-in-command, and never considered herself a State employee.

Yazmin Harper, the Parish's human resources supervisor, confirmed the Parish had paid Ms. Negrete's (undisputed) medical and indemnity benefits.

Dale Sibley, the registrar of voters, testified *he* is by statute a State employee, as are his chief deputy and confidential assistant. The Election

3

Code authorizes him to have seven full-time employees, and up to 15 employees at election time, with the temporary employees being paid out of the Parish's budget. He considered Ms. Negrete a Parish employee and never thought he was "lending" her to the State; nobody from the State could fire any of his employees; and Ms. Negrete always used exclusively Parish equipment. He agreed, however, his office processed State elections, his employees (including Ms. Negrete) used a "Yubi Key" to log results into the State computer system, and she was working a State election (the BESE race) when she was injured.

The Parish also offered the deposition of Ms. Feazell, the chief deputy registrar, who confirmed the registrar, Mr. Sibley, had the ultimate authority to hire and fire all employees, and she (Ms. Feazell) could probably fire Ms. Negrete too.

The State offered various documents but called no witnesses. Both sides offered the surveillance video of Ms. Negrete's accident.

**ACTION OF THE WCJ**

After taking the case under advisement, the WCJ delivered oral reasons. He recognized the claimant and the registrar both considered Ms. Negrete a Parish employee, but he found this not binding. He also recognized that R.S. 23:1034 excluded employees of political subdivisions from the State's workers' comp coverage, but he found the statutes did not explicitly cover registrar personnel. He therefore looked to the nature of the office. One case held the registrar was a "hybrid" agency, *In re Bankston*, 306 So. 2d 863 (La. App. 1 Cir. 1975); another found "registrar's employees are considered state employees," *State v. Center for Tech & Civic Life*, 21,670 (La. App. 3 Cir. 3/30/22), 350 So. 3d 534, *writ denied*, 22-00721 (La.

4

6/28/22), 341 So. 3d 568; and an early case said if an office is established "in the first instance" by the Constitution, it is a State office, *State v. Taylor*, 44 La. Ann. 783, 11 So. 132 (1892). Also, a more recent Attorney General Opinion found the registrar is "subject to the direction" of the Secretary of State and "may not be considered a local employee," Att. Gen. Op. 19-0097 (9/3/19). From this authority, the WCJ found the registrar is a "hybrid office."

The WCJ then stated the parties had abandoned the theories of joint or statutory employment, leaving only the issue of the borrowed employee. The WCJ cited factors purporting to determine whether a claimant is a borrowed employee, *Biggs v. S. Lifestyles Dev. LLC*, 22-463 (La. App. 3 Cir. 3/22/23), 363 So. 3d 568.[1] Applying these factors, the WCJ found the State was a borrowing employer of Ms. Negrete at the time of her accident.

The WCJ rendered judgment finding the claimant sustained a work-related accident and was entitled to indemnity benefits of $196.47 a week. The judgment further found the State was the claimant's borrowing employer at the time of the work-related accident and held the State liable for one-half of all compensation benefits "paid to date and future[.]"

The State moved for new trial, which was denied, and then took this suspensive appeal.

### THE PARTIES' POSITIONS

The State designates three assignments of error. By its first, it urges the WCJ committed legal error in failing to apply the clear and unambiguous

---

[1] This court notes, *Biggs* applied the concept of *joint employment*, under La. R.S. 23:1031 (B), not *borrowed employees*, a purely jurisprudential concept. However, the latter entails a similar nine-factor analysis. *Galindo v. Castillo*, 56,202 (La. App. 2 Cir. 4/9/25), 409 So. 3d 1061, *writ denied*, 25-00570 (La. 9/16/25), 416 So. 3d 481.

language of R.S. 23:1034 (D), under which workers' comp benefits for Parish employees are to be provided by the Parish. A parish is obviously a political subdivision, *State v. Coulon*, 197 La. 1058, 3 So. 2d 241 (1941), and the consent agreement established Ms. Negrete was a Parish employee; hence, § 1034 (D) prohibits any order for the State to pay her comp benefits. Even if she really was a "borrowed employee," this statute prohibited the relief granted.

By its second assignment of error, the State urges the WCJ committed legal error by identifying Ms. Negrete as a State employee in derogation of the Election Code. Specifically, R.S. 18:59.2 (A)(1) and 18:59 (I)(1) fix the maximum number of permanent and temporary employees in a registrar's office, and Mr. Sibley's testimony confirmed these limits. Under this scheme, he had filled all permanent positions and had no authority to hire anybody else on behalf of the State; Ms. Negrete, as a temporary worker, was by necessity a Parish employee.

By its third assignment, the State argues, even if the Parish could borrow from the State, the *State* was not a *borrowing employer* from the Parish. The law recognizes the concept of "borrowing employer," using nine factors, *Lastie v. Cooper*, 14-561 (La. App. 5 Cir. 12/23/14), 167 So. 3d 150, *writ denied*, 15-0123 (La. 5/1/15), 169 So. 3d 371. The State submits most of these factors are neutral, as the registrar, Mr. Sibley, clearly works for both the State and the Parish; critically, however, there was no agreement for the State to borrow Ms. Negrete. This, the State submits, is fatal to the claim; in support, it cites *Hall v. Equitable Shipyard Inc.*, 95-1754 (La. App. 4 Cir. 2/29/96), 670 So. 2d 543. The State concludes the finding of a borrowed employee cannot exist and is legally wrong.

6

The Parish argues the WCJ analyzed the case right: Ms. Negrete was employed by the Parish, but she was hired and controlled by State employees, her pay was set by the State, the Attorney General opinions confirm the registrar's employees are indeed State employees, and Mr. Sibley's comments to the contrary are simply not binding on the WCJ. The Parish also submits that, under the employment relationship test of *Chailland*, *supra*, aside from the payment of wages, all factors favored finding employment by the State. It concludes the WCJ committed no legal or manifest error in finding borrowed employment, and it properly allocated payment of benefits in accordance with La. R.S. 23:1031 (C).

**APPLICABLE LAW**

An employee who receives personal injury by accident arising out of and in the course of his employment, and is not otherwise eliminated from coverage, is entitled to compensation from his employer in the amounts and on the conditions specified by the workers' compensation law. La. R.S. 23:1031 (A). This coverage applies to any person employed by the State or any political subdivision thereof. La. R.S. 23:1034 (A). In the case of public employees, the obligation to pay benefits is allocated between the State and political subdivisions by R.S. 23:1034 (D), which states, in pertinent part and with *emphasis added*:

> Employees of the state, but not those of political subdivisions, shall be provided compensation * * * by the office of risk management of the Division of Administration * * *. For purpose of this Section, "employees of the state" mean the employees of "state agencies" as defined by R.S. 39:1527(1). *Employees of political subdivisions shall be provided compensation under this Section by the governing authorities of their respective political subdivisions.* The fact that the state may grant to an employee of a political subdivision any additional or supplemental pay or otherwise provide funds for the payment of such employee's salary shall not make such employee, in whole or in part or in any way, an employee of the state.

7

Under La. R.S. 39:1527 (3), "state agencies" do not include parish officials set forth in La. Const. art. 6, §§ 5(G) and 7(B). These constitutional sections, however, do not refer explicitly to registrars of voters.

The governing authority of each parish shall appoint a registrar of voters in the manner provided by law. La. Const. art. 11, § 5. Each registrar may appoint deputies, confidential assistants, or other office employees. La. R.S. 18:59 (A). The salaries of the chief deputy registrar and confidential assistants are paid in part by the state and in part by the parish governing authority. La. R.S. 18:59 (H). The registrar of voters, and his deputy or permanent employees, are considered State employees, for purposes of the retirement system. La. R.S. 11:2031 (10), (11).

Based on its population at the time, the Caddo Parish Registrar of Voters was authorized to have seven positions. La. R.S. 18:59.2 (A)(1)(5). The salaries of "additional temporary personnel" are paid only by the parish governing authority. La. R.S. 18:59 (I)(1).

The jurisprudence recognizes the concept of "borrowed employee," whereby a nonemployee may be "deemed to be under the control of the employer" sufficiently to impose vicarious liability. H. Alston Johnson, 13 La. Civ. L. Treatise (Workers' Comp), 5 ed. (2010), § 58. To determine whether a worker is a borrowed employee, this court applies a nine-question test to the working relationship. *Galindo v. Castillo*, *supra*. The nine questions are:

1. Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
2. Whose work is being performed?
3. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
4. Did the employee acquiesce in the new work situation?

8

5. Did the original employer terminate his relationship with the employee?
6. Who furnished the tools and place for employment?
7. Was the new employment over a considerable length of time?
8. Who had the right to discharge the employee?
9. Who had the obligation to pay the employee?

An admission by a party in a pleading constitutes a judicial confession and is full proof against the party making it. La. C.C. art. 1853; *Conti Holding LLC v. 1025 Bienville LLC*, 22-01288 (La. 3/17/23), 359 So. 3d 930; *Sherman v. Anderson-Scott*, 56,429 (La. App. 2 Cir. 8/27/25), 419 So. 3d 881, *writ denied*, 25-01240 (La. 12/9/25), 422 So. 3d 297.

Factual findings of the WCJ are reviewed under the manifest error standard. *Lafayette Bone & Joint Clinic v. La. United Bus. SIF*, 15-2137 (La. 6/29/16), 194 So. 3d 1112; *Marshall v. City of Winnsboro*, 56,553 (La. App. 2 Cir. 11/19/25), 425 So. 3d 256, *writ denied*, 25-01631 (La. 3/25/26), 428 So. 3d 265. Under this standard, the judgment must stand if it is found to be reasonable. *Buxton v. Iowa Police Dept.*, 09-0520 (La. 10/20/09), 23 So. 3d 275; *Marshall v. City of Winnsboro*, *supra*. By contrast, interpretations of the workers' comp law are questions of law and subject to the de novo standard of review, without deference to the legal conclusions of the WCJ. *Burgess v. Sewerage & Water Bd. of New Orleans*, 16-2267 (La. 6/29/17), 225 So. 3d 1020; *Eilts v. Twentieth Century Fox TV*, 54,757 (La. App. 2 Cir. 9/21/22), 349 So. 3d 1038.

**DISCUSSION**

The critical question is Ms. Negrete's status as either a State or a Parish employee. The WCJ performed a labored analysis to find the registrar's office was a "hybrid office" and, in the process, sidestepped the

9

basic requirement of the *claimant's* status. We have therefore reviewed Ms. Negrete's employment status de novo.

The law makes the registrar himself a State employee, as the Constitution expressly creates the position, La. Const. art. 11, § 5, and the statutes expressly place the registrar, along with any deputy or permanent employee of the registrar's, in the State retirement system, La. R.S. 11:2031 (10), (11). The attorney general has confirmed that the registrar is a state employee. Att. Gen. Op. 19-0097 (9/3/19).

The situation with the registrar's temporary employees is not so clear. The statutes set out a maximum number of "authorized positions," La. R.S. 18:59.2 (A)(2), and provided that "additional temporary personnel" shall be paid from funds appropriate by the parish governing authority, La. R.S. 18:59 (I)(1). Payment by the Parish exclusively creates a strong inference that such additional temporary personnel are Parish employees. Moreover, the Constitution, the law regarding registrars, R.S. 18:59 (I)(1), and the law regarding State retirement, R.S. 11:2031 (10), (11), conspicuously omit any reference to the registrar's temporary personnel. In short, the statutes regulating registrars do not regard their temporary employees as State employees.

Specifically relevant to Ms. Negrete, the workers' comp law, R.S. 23:1034 (D), carefully delineates between State employees, who receive benefits from the office of risk management, and other public employees, who receive benefits from their "respective political subdivisions." To emphasize the distinction, the fact that the state may grant an employee of a political subdivision any additional or supplemental pay "shall not make such employee, in whole or in part or in any way, an employee of the state."

10

This language shows a strong intent that employees who are not designated as State employees cannot receive the workers' comp benefits of State employees. Section 1034 (D), in our view, eliminates any doubt that the Constitution or the law regarding registrars can be "finessed" into calling Ms. Negrete a State employee.

This court also considers the consent agreement entered between Ms. Negrete and the Parish and the testimony of all witnesses. While the agreement reserved the Parish's right to seek contribution from the State, it established that she was a Parish employee, a point reinforced by Mr. Sibley, Ms. Negrete, and Ms. Feazell. This is a judicial confession of the fact. La. C.C. art. 1853; *Sherman v. Anderson-Scott*, *supra*. While it may not be legally binding as a conclusion of law, it corresponds to the Constitutional and statutory structure, under which a temporary employee is a Parish employee, not a State employee.

In light of this conclusion, we distinguish the dictum in *State v. Center for Tech & Civic Life*, *supra*: that court's statement, "In fact, the registrar's employees are considered state employees," is followed by an explicit reference to *authorized positions*, R.S. 18:59.2 (A)(1), with respect to laws prohibiting the use of private money to manage elections, R.S. 18:1400.3 (A). We also distinguish the broad language in the heading of one Attorney General opinion, La. Att. Gen. Op. 85-355 (5/23/85): the early reference to "the registrar of voters and his employees as state or parish officials or employees" is later refined to "other permanent employees of the registrars of voters" and "their chief deputies, and confidential assistants" as the State employees with respect to accrued, sick and compensatory leave. Contrary

11

to the WCJ's reasoning, these authorities do not support the legal conclusion that Ms. Negrete was a State employee.

Further, we are unconvinced by the suggestion, raised at trial and at oral argument, that because Ms. Negrete was working a *State election* (BESE) at the time of her injury she can be deemed a State employee. Most municipal and parochial workers are, to some extent, performing duties in compliance with State law – local police enforce State criminal statutes, deputy clerks of court record mortgages and conveyances as required by the Civil Code – but this does not make them State employees. The applicable statute, R.S. 23:1034 (D), carefully places close cases outside the coverage of State workers' comp benefits. With this conclusion, we cannot accept the WCJ's apparent finding that Ms. Negrete was a hybrid employee of the Parish and the State.

Finally, we address the WCJ's principal finding, that the State was a borrowing employer of Ms. Negrete. Given that Mr. Sibley was allocated seven permanent employees, all such positions were filled, and additional, temporary workers could not be considered State employees, we doubt whether the jurisprudential concept of borrowing could apply. However, because it was a large portion of the WCJ's rationale, we have reviewed his factual findings.

To determine whether a worker is a borrowed employee, courts apply a nine-question test to the working relationship. *Galindo v. Castillo, supra*; *Rogers v. State*, 43,000 (La. App. 2 Cir. 4/30/08), 982 So. 2d 252, *writ denied*, 08-1178 (La. 9/19/08), 992 So. 2d 931. The testimony was uniform: the person with control over the work done by Ms. Negrete was the registrar, Mr. Sibley, or his chief deputy, Ms. Feazell; there was no agreement,

12

implicit or explicit, between the registrar and the State for the performance of Ms. Negrete's functions; she did not terminate her relationship with the Parish; she did not acquiesce in any new work situation; the Parish furnished the tools and place of employment; and the Parish had the right to discharge, and the duty to pay, Ms. Negrete. These factors strongly indicate there was no borrowing. The point was raised that, at the time of her accident, Ms. Negrete was processing absentee ballots for a State election; however, for the reasons already discussed, this cannot change her to a State employee. There is no showing of a "new employment," or that it persisted for any length of time. In short, the record will not support the WCJ's factual finding that she was a "borrowed employee" of the State. That finding is manifestly erroneous and will be reversed. Ms. Negrete was, and remained, a Parish employee.

## CONCLUSION

For the reasons expressed, the judgment is REVERSED insofar as it found the State was the claimant's "borrowing employer" and was liable for one-half of her compensation benefits. Judgement is RENDERED casting the Parish of Caddo with all workers' compensation benefits, paid to date and future. Because no appellate costs have been deferred, La. R.S. 13:4521 (A)(1), costs in this court are not assessed. La. C.C.P. art. 2164.

**REVERSED AND RENDERED**.